# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SANFORD ROBERTS,

:

    Petitioner,                                    Case No. 1:06-cv-765

:         District Judge Susan J. Dlott
  -vs-                                          Chief Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional
  Institution,

:

    Respondent.

---

## REPORT AND RECOMMENDATIONS

---

       Petitioner Sanford Roberts brought this habeas corpus action under 28 U.S.C. §2254 to obtain relief from his conviction in the Hamilton County Common Pleas Court and subsequent sentence to thirty years incarceration. In his Petition, he pleads the following grounds for relief:

       **Ground One:** Trial court erred by overruling *Batson* challenge.

       **Supporting Facts:** Whether the state's use of peremptory challenges to exclude minority members from jury, violated his Equal Protection and Due Process rights Guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

       **Ground Two:** Trial court erred by permitting prosecutorial misconduct in making an improper closing argument to the jury which deprived defendant of his right to a fair trial.

       **Supporting Facts:** Whether the prosecutor's improper closing argument prejudices the appellant and constitutes misconduct sufficient to merit reversal.

       **Ground Three:** Trial court erred to the prejudice of petitioner, by refusing to grant the jury's request during its deliberations for

>   readback transcript of a witness testimony.
>
>   **Supporting Facts:** When the trial court in response to a request from the jury during deliberations, refuses to allow a readback of trial testimony it abused its discretion to the prejudice of petitioner.
>
>   **Ground Four:** Insufficient evidence to sustain a conviction.
>
>   **Supporting Facts:** Where the evidence presented at trial fails to prove each and every element of the charged crime beyond a reasonable doubt, it is insufficient as a matter of law to sustain a conviction; and where the appellate record shows that the jury clearly lost its way in resolving conflicts in evidence and this creates a miscarriage of justice, the conviction must be overruled.

(Petition, Doc. No. 1, at 4-5.)

With the Court's permission, Mr. Roberts amended his Petition to add a fifth ground for relief: "The trial court erred to the prejudice of appellant by imposing consecutive and maximum sentences when the record does not support the maximum sentences, nor the imposition of consecutive sentence." (Request for Leave to Amend, Doc. No. 8, at 2.)

## Procedural History

Petitioner was indicted on one count of Aggravated Robbery in violation of Ohio Revised Code §2911.01(A)(1), with specifications, one count of Robbery in violation of Ohio Revised Code § 2911.02(A)(2), with specifications, one count of Felonious Assault in violation of Ohio Revised Code § 2903.11(A)(1), with specifications, one count of Felonious Assault in violation of Ohio Revised Code § 2903.11(A)(2), with specifications, and one count of Having Weapons While Under Disability in violation of Ohio Revised Code § 2923.13(A)(3). A jury convicted him of all counts and specifications and the trial judge imposed a sentence of thirty years. He appealed to the Ohio

First District Court of Appeals, raising as assignments of error all the grounds for relief he raises here. That court overruled all the assignments and the Ohio Supreme Court declined jurisdiction of a requested appeal.

## Analysis

Respondent concedes that Petitioner has exhausted all available state court remedies, has preserved all his claims for federal review by not procedurally defaulting on any of them, and has filed his Petition within the one-year statute of limitations adopted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). Thus the Court proceeds to consider each ground for relief in turn.

## Ground One: *Batson* Challenge

In his first Ground for Relief, Mr. Roberts asserts he was deprived of his Fifth and Fourteenth Amendment rights when the state courts denied his challenge to the excuse of an African-American juror.[1]

*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), prohibits race-based peremptory challenges by a prosecutor. A trial court must use a three-step process to evaluate a *Batson* claim. First, the opponent must make a *prima facie* showing that the proponent of the

---

[1] Although the juror excused was also female and discrimination against women venirepersons can also form the basis of a Fourteenth Amendment claim, Petitioner does not make that claim in this case.

strike has exercised a peremptory challenge on the basis of race. The burden then shifts to the proponent to articulate a race-neutral reason for the challenge. Finally, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995); *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 1865, 114 L. Ed. 2d 395 (1991). To make a *prima facie* showing, a defendant must show that he is a member of a cognizable racial group, that a challenge has been exercised to remove a venireperson of the same race, and any additional facts and circumstances from which an inference could be drawn that the prosecutor had used the peremptory challenge in a race-based manner. *Batson,* 476 U.S. at 79. The defendant is entitled to rely on the fact that the peremptory challenge process is one in which those who are of a mind to discriminate on the basis of race are able to do so. *Id.* A trial judge's conclusion that the challenge was race-neutral must be upheld unless it is clearly erroneous. *Hernandez*; *supra*; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990). A State may not require a prosecutor to meet a more likely than not burden at the prima facie stage. *Johnson v. California,* 545 U.S. 162, 125 S. Ct. 2410; 162 L. Ed. 2d 129 (2005).

The First District Court of Appeals decided this claim on the merits.

> [*P13] During voir dire, the prosecutor had already excluded four African-American jurors with peremptory challenges when she challenged a fifth African-American, juror Burns. Roberts, who is African-American, objected, relying on Batson v. Kentucky. In *Batson*, the Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution.
>
> [*P14] The trial court held a sidebar conference and asked the state to give a race-neutral explanation for the challenge. The state expressed two reasons for excluding Burns. First, Burns's responses

indicated that she did not feel the police would provide an adequate response to her reporting of a crime and that she had a "street justice mentality." Second, Burns stated her belief that there was different treatment under the law based upon a person's race and socioeconomic background. The trial court found this explanation race-neutral and overruled the *Batson* challenge.

[*P15] A *Batson* claim for purposeful discrimination in juror selection encompasses three steps. First, a defendant must establish a prima facie case of purposeful discrimination by demonstrating that members of a cognizable racial group have been peremptorily challenged, and that the facts and any other relevant circumstances raise an inference that the prosecutor has used the challenges to exclude jurors because of their race. Once this burden is met, the state must then provide a race-neutral explanation for the striking of a particular juror. If the state puts forth a race-neutral explanation, the trial court must then decide, on the basis of all the circumstances, whether the defendant has proved purposeful racial discrimination.

[*P16] Roberts submits that the prosecutor's explanation was not race-neutral, but a self-serving comment not supported by the questioning. He cites Burns's indication to the prosecutor that "she hoped she would be able to separate her feelings that race and socioeconomic class go into this [disparate treatment under the law]."

[*P17] The race-neutral explanation given by the prosecutor during a Batson challenge does not need to rise to the level justifying a challenge for cause. We will not reverse a trial court's finding of no discriminatory intent unless the finding was clearly erroneous.

[*P18] The facts of this case support the state's explanation. When asked by the prosecutor whether she believed "that all people are allowed to have equal protection of the laws?" Burns replied, "I believe it is allowed. I don't believe that it happens." She went on to say that there was different treatment under the law based upon "race and economic background." When the prosecutor tried to explore Burns's attitude toward the police after she was the victim of three burglaries, Burns said that she "dealt with [her burglaries] on [her] own" and did not report them because "it would be a waste of time." She said, "I took care of it myself. * * * I called some people that I knew and told them what was taken and I got it back."

[*P19] In light of Burns's comments, we hold the trial court did not err in accepting the prosecutor's race-neutral explanation for the

challenge. Accordingly, we overrule the first assignment of error.

*State v. Roberts*, 2005 Ohio 4050, 2005 Ohio App. LEXIS 3700, ¶¶ 13-19 (Ohio App. 1st Dist. 2005)(footnotes omitted).

When a state court decides a federal constitutional claim later submitted to the federal courts in habeas corpus, the federal court must defer to the state court decision unless it is contrary to or an objectively unreasonable application of federal law as clearly established by decisions of the United States Supreme Court.

> In *Williams [ v. Taylor*, 529 U.S.362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).], the Court held that an "unreasonable application" of clearly established federal law established by Supreme Court precedent occurs if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." 120 S. Ct. at 1520. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Id.* Although the Court failed to specifically define "objectively reasonable," it observed that "an unreasonable application of federal law is different than an incorrect application of federal law." *Id.* at 1522. Thus, even if we believe that a state court incorrectly applied federal law, we must refuse to issue the writ of habeas corpus if we find that the state court's decision was a reasonable one."

*Machacek v. Hofbauer*, 213 F.3d 947, 953-54(6th Cir. 2000).

This Court concludes that the First District Court of Appeals decision on the *Batson* claim was not an objectively unreasonable application of *Batson* and cases following it in the Supreme Court. Petitioner certainly established a prima facie case in that he and the excused venirewoman are both African-American and his lawyer properly preserved the objection.[2] However, the

---

[2]Although other African-American venirepersons were excused, Petitioner's counsel only objected as to the one potential juror on whom the trial court held the sidebar hearing.

-6-

explanation given by the prosecutor was race neutral and the facts supporting it appear in the venireperson's answers to questions in open court. Thus the prosecutor was able to refer to facts which both the court of appeals and this Court can verify, rather than unrecorded non-verbal cues or "hunches" which are so well suited to cover racial discrimination. Petitioner did not offer any evidence that the prosecutor's reason was pretextual.

Because the state court's decision was not objectively unreasonable, Petitioner's first Ground for Relief is without merit.

### Ground Two: Prosecutorial Misconduct

In his Second Ground for Relief, Petitioner argues the prosecutor committed misconduct in closing argument and the trial court's failure to stop it violated his constitutional right to a fair trial. The First District Court of Appeals also decided this claim on the merits, holding as follows:

> [*P20]  In his second assignment of error, Roberts argues that the prosecutor made improper comments during closing argument, depriving him of a fair trial.
>
> [*P21] If a comment by the prosecutor was improper, we must determine whether it was so prejudicial that it denied Roberts a fair trial. In doing so, we must examine the comment in the context of the entire trial, and in the context of the closing argument as a whole.
>
> [*P22]   Roberts argues that the prosecutor made an improper comment about the connection between the .45-caliber weapon found in the Honda and the shell casing found at the scene of the shooting. She said in closing, "[Mr. Harris] never mentions the gun, the gun that shot Njaga Faal that left the shell casing that matches this gun that was at the floor board of the Honda that sped away from the scene that was at [Roberts's] feet." After an objection, the prosecutor again said, "I'm sorry, the casing matches this gun." The trial court then informed the jury, "Great latitude is given to the attorneys. As

long as they don't misstate the evidence, they are allowed to comment upon the evidence and draw their conclusions, but the ultimate conclusions must be drawn by you, the ladies and gentlemen of the jury."

[*P23] Commentary in closing argument must be based upon the evidence. Generally, the state may comment freely on "* * * what the evidence has shown and what reasonable inferences may drawn therefrom."

[*P24] The evidence demonstrated that a single shell casing had been found near where Faal had been shot and that this casing had been fired from the .45-caliber gun found in the back seat of the Honda. The bullet that wounded Faal was never found, and the firearms expert never testified that the .45-caliber gun found in the Honda was used to shoot Faal. But the jurors were free to infer that the .45-caliber shell casing found at the scene of the shooting encased the bullet that injured Faal. The prosecutor's comment on this evidence and the inference to be drawn from it was a little unclear, but she clarified her point after the objection by stating that the "casing matches the gun."

[*P25] The comment, based upon the evidence presented and a reasonable inference from that evidence, was not improper.

[*P26] Roberts also cites a passage in closing argument where the prosecutor, without objection, stated the following:
> Each attorney determines which area they want to attack. Like spin doctors for a politician, it's their job to highlight the positives and ignore the negatives with respect to their client. That's their job. And that's fine; but I remind you that nothing that comes out of their mouths is evidence.
>
> As for Mr. Roberts, Mr. Harris gave you a specific story about this drug deal gone bad. Make a great show for NYPD or Law and Order. But it's not evidence, you can't consider it. Makes you wonder where that information came from." (Emphasis added by Roberts.)

[*P27] Roberts argues that this statement denigrated Roberts's

>defense counsel, Rodney Harris, and insinuated that his trial strategy was designed to confuse or mislead the jury. The state argues that the prosecutor was merely commenting permissibly on the lack of evidence to support the defense's theory of the case.
>
>[*P28] While courts have consistently recognized that the prosecution has a great degree of latitude in closing argument, this latitude does not extend so far as to permit the denigration of defense counsel. By naming Mr. Harris and adding the accusatory question "[Makes] you wonder where that information came from?", the prosecutor came close to crossing the line separating permissible comment on the weakness of the defense and impermissible personal attack on the integrity of counsel.
>
>[*P29] Even if we were to conclude that the comment was improper, there was no objection to the comment, and the evidence against Roberts was substantial. After viewing the comment in the context of the entire trial and closing argument as a whole, we cannot say that this one comment rose to the level of plain error and affected the outcome of the trial.
>
>[*P30] Accordingly, the second assignment of error is overruled.

*State v. Roberts, supra*, at ¶¶ 20-30.

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A

four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).

      The First District Court of Appeals decision is not an objectively unreasonable application of clearly established federal law. First of all, although the court cites to state court decisions, those cases embody the same law as the federal cases cited above. This Court agrees with the conclusion that it was not improper to comment about the shell casing. Even though the injuring bullet itself was never found, the presence of a casing at the scene of the crime which matched the .45 caliber weapon found with Mr. Roberts strongly supports the inference that this was the same weapon.

While the comment about defense counsel was improper, it hardly can be said to have infected the whole trial, particularly since the attribution of a story about a drug deal gone bad to the defense was not untruthful.

Petitioner's Second Ground for Relief is also without merit.

### Ground Three: Failure to Read Back Testimony

In his Third Ground for Relief, Petitioner reiterates for this Court the claim he made in the state courts that the trial judge committed error by refusing to have a portion of the testimony read back to the jury at their request.

The First District Court of Appeals decided this claim, presented as the third assignment of error, completely on state law grounds and indeed it does not raise a federal constitutional claim. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), *Barclay v. Florida,* 463 U.S. 939, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

No clearly established case law from the United States Supreme Court provides a constitutional right to have testimony read back to a criminal trial jury. In denying this assignment of error, the state courts did not act contrary to nor unreasonably apply clearly established federal

law. The Third Ground for Relief is therefore without merit, even construing it as a constitutional claim.

### Ground Four: Insufficient Evidence

In his Fourth Ground for Relief, Petitioner asserts that there was insufficient evidence to convict him of every element of the charged crimes.[3]

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

---

[3]Respondent treats this Ground for Relief as if it raised the claim also made in the state courts that the conviction was against the manifest weight of the evidence and rightly points out that a manifest weight claim does not rise to a constitutional level. The Court, however, does not read the Petition as repeating the manifest weight claim.

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

The First District Court of Appeals also decided this claim on the merits, holding as follows:

> [*P34]  In his fourth assignment of error, Roberts challenges the sufficiency and weight of the evidence supporting his convictions for aggravated robbery with a three-year firearm specification, robbery, felonious assault, and having a weapon under a disability.
>
> [*P35]  In reviewing the record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution. . . .
>
> [*P36]  The state presented more than sufficient evidence to convict Roberts. Faal was accosted, shot, and robbed of money. He suffered life-threatening injuries. He positively identified Roberts as one of his assailants shortly after the shooting and again at trial. A 911 caller described a man fitting Roberts's description stuffing something into the back seat of a black Honda immediately after the shooting. After Roberts entered the Honda, the driver sped off. The police stopped the Honda several minutes later and apprehended the occupants. Roberts, who had been sitting in the rear passenger seat, was carrying over $ 900. The police found a .45-caliber gun on the floorboard where Roberts had been sitting. They also found the gun's magazine and a purple latex glove stuffed into the pocket behind the driver's seat. The state presented testimony demonstrating that the only casing found at the scene of the shooting came from the .45-caliber gun found in the back of the car. The state also  presented evidence that both weapons found in the Honda were operable.
>
> [*P37]  In light of this evidence, we hold that the state presented more than sufficient evidence to convict Roberts of aggravated robbery with a firearm specification, robbery and felonious assault. Further, Roberts stipulated at trial to having a prior drug conviction. This stipulation and the evidence presented at trial sufficently [sic]

>    supported Roberts's conviction for having a weapon under a disability.

*State v. Roberts, supra,* at ¶¶ 34-37 (footnotes omitted). The court applied *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991), but as noted above, *Jenks* adopts the *Jackson v. Virginia* standard.

This Court cannot say that the state court decision is an objectively unreasonable application of *Jackson v. Virginia.* Petitioner was positively identified as one of the assailants by the victim and stopped in a car matching the description of the getaway car very shortly after the robbery; a great deal of incriminating circumstantial evidence – guns, money, and a purple latex glove such as someone might wear to avoid leaving fingerprints – was found in the car. The direct and circumstantial evidence taken together are more than sufficient for a rational trier of fact to have found Petitioner guilty. Therefore the Fourth Ground for Relief is without merit.

## Ground Five: *Blakely* Claim

In his Fifth Ground for Relief, Petitioner asserts his sentence violates his rights under the Sixth Amendment as determined by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004). There the Court held that any fact which increases the sentence beyond a legislatively-mandated guideline, even if within a statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt. The Ohio Supreme Court has found that *Blakely* renders the Ohio sentencing scheme, adopted by Senate Bill 2 in 1996, unconstitutional. *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006).

The First District Court of Appeals found that Petitioner's fifth assignment of error contained two claims, a statutory claim and the *Blakely* claim made here. It held

> [*P40] Roberts challenges the trial court's imposition of maximum terms on two separate grounds. First, he argues that the imposition of the maximum terms violated Ohio's sentencing statutes. Second, citing *Blakely v. Washington*, he argues that the imposition of maximum terms violated his Sixth Amendment right to have any fact not admitted to but essential to his punishment submitted to a jury and proved beyond a reasonable doubt. Roberts argues that the sentence in this case violated the holding in *Blakely* because the court's impositon [sic] of the maximum was based upon its own finding that Roberts had committed "the worst form of the offense[s]" and "posed the greatest likelihood of recidivism."
>
> [*P41] We hold that the court did not err in imposing maximum terms of incarceration. The court made the relevant statutory findings on the record, and we cannot clearly and convincingly find that the record does not support the findings or that those findings were contrary to law. Further, the court based its recidivism finding upon Roberts's significant "adult and felony" convictions. We have held that *Blakely* permits the fact of a prior conviction to support an enhanced sentence. Under these facts, where the court imposed the maximum on a finding of recidivism expressly due to prior convictions, the sentence did not violate Roberts's Sixth Amendment rights.
>
> [*P42] The court's alternative basis for imposing the maximum, that Roberts had committed "the worst form of the offense," violated *Blakely*, but this error was harmless in light of the court's articulation of a separate, legitimate ground to support the imposition of the maximum.

*State v. Roberts, supra*, at ¶¶ 40-42 (footnotes omitted). In other words, the court found that the trial judge had made two findings, one proper under *Blakely* and one not, either one of which would independently support the imposition of a maximum sentence under Ohio law.

The Court of Appeals does not completely spell out its reasoning, but the reason why reliance on a prior conviction or convictions not proved to a jury does not violate *Blakely* is because

-15-

the United States Supreme Court has made that an exception. When it decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 2355, 147 L.Ed.2d 435 (2000), it specifically declined to overrule its prior decision in *Almendarez-Torres v. United States,* 523 U.S. 224 (1998), which allowed the fact of a prior conviction to be found by the judge alone, thus protecting a criminal defendant from exposure to the jury of his prior convictions.

This case was, of course, decided in the First District Court of Appeals before *Foster, supra,* but that does not change the result. In *Foster* the Ohio Supreme Court adopted severance as a remedy for the unconstitutionality of parts of Senate Bill 2 so that after *Foster*, Ohio trial judges are no longer required to make the findings to justify a maximum or consecutive sentence that S.B. 2 required. Thus even if there had been a *Blakely* violation in the sentence here, which the First District correctly held there was not, no reversal would be required because there would be no prejudice: the trial judge is very likely to have imposed the same sentence when he could act at his discretion as he imposed when that discretion was limited by S.B. 2. *Blakely* error is subject to harmless error analysis under *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Washington v. Recuenco*, 548 U.S. ___, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006).

Therefore, Petitioner's Fifth Ground for Relief is also without merit.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with the conclusions reached herein, Petitioner should be denied leave to appeal *in forma pauperis* and any requested

certificate of appealability.

December 28, 2007.

                                                              s/ **Michael R. Merz**
                                           Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

H:\DOCS\Roberts Habeas R&R.wpd